CLARA H. HERBERT, APPELLEE, V. STATE OF NEBRASKA, APPELLANT.

FILED JANUARY 20, 1933.  No. 28616.

C. A. Sorensen, *Attorney General,* and *Clifford L. Rein,* for appellant.

*Herman Ginsburg* and *Joseph Ginsburg, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and PAINE, JJ.

PAINE, J.

This is an appeal by the state of Nebraska upon a proceeding brought by the widow of a deceased employee under the workmen's compensation law, wherein such widow recovered a judgment in the district court for full death and funeral benefits, as authorized by law.

John W. Herbert, aged 71 years, was employed as a cement inspector for the state of Nebraska at $135 a month. He went to work at 5:30 a. m. upon June 30, 1931, at which time the temperature was 80 degrees, and suffered a severe heat prostration before noon, and was taken to a hotel in Central City by the engineer in charge, where he died before 6 o'clock the same afternoon.

At the time of the accident, he was working one mile east of Central City, at a cement dock, which was located in a slight depression, having a sand pile just to the east of the dock, averaging 25 feet in height, and upon the west side there was a string of five or six box-cars on a spur track, and on the north there was a built-up roadbed, all of which made it difficult for any breeze to strike him. His duties were to see that the right amount of cement was put into the paving mixture, to test the weight of the steel buggies to see that they all weighed approximately 250 pounds apiece, and also to make cement tests. Considerable cement dust was in the air where he worked, caused by the dumping of an equivalent of 4,650 sacks of cement a day at that dock, and the cement on this job was not shipped in sacks, but shipped as loose cement by the carload. The heat at the place where deceased worked was more intense than at other places where men were working on this job. Before 11 o'clock in the morning, when the temperature was about 98 degrees, deceased suddenly complained of being very ill, and was at once taken to the hotel in town. The wife

of the manager of the Ratcliff Hotel testified that he told her when he came in that he was very sick. She testified that he looked ashy, that he refused to eat any food during the afternoon. The manager of the hotel testified that he went up to the room of deceased several times, and that he complained of feeling cramps in his stomach and an awful diarrhea; that he asked for water, and he brought him a pitcher full of cold water; that he was lying flat on his back on the bed; that he had no clothes on, but a sheet over his feet; that about 5 p. m. the deceased was lying just the same, but was waiving his hand, and that when he went up again about 6 o'clock he found that he was dead, and called Dr. Boyd, who testified he found him in the position described, with his face flushed. He testified he had been dead about an hour at that time, and that the cause of death was heat prostration. The testimony of the three medical experts called to testify in the case was that, under the conditions and place of his employment, deceased would be peculiarly susceptible to heat prostration, and would be subjected to risk and hazard greater than that of the ordinary public, and each of the three testified that in their opinion he died of heat prostration. One of the physicians testified that the usual reaction to a heat prostration is that the patient does not realize how sick he is until he goes into a state of collapse. The state produced no medical testimony.

Two errors are relied upon for reversal: First, that the evidence is legally insufficient to show that deceased came to his death by heat prostration; and, second, that the evidence is insufficient to show that deceased's heat prostration, if any occurred, arose out of his employment by the state of Nebraska.

1. It is incumbent upon this court in compensation cases to consider the same *de novo,* the same as one tried in equity, as required by section 48-137, Comp. St. 1929. *Southern Surety Co. v. Parmely,* 121 Neb. 146; *Siedlik v. Swift & Co.,* 122 Neb. 99.

Section 48-109, Comp. St. 1929, places the burden of proof on the employee to prove by a preponderance of the evidence that personal injury was caused to the employee by an accident arising out of and in the course of his employment. *Bartlett v. Eaton,* 123 Neb. 599.

An injury "arises out of" an employment when it occurs in the course of the employment and as a proximate cause of it; that is, when the injury is a natural and necessary incident or consequence of the employment, though not foreseen or expected. The phrase points to the origin or cause of the injury, and presupposes the existence of a causal connection between it and the employment. *Larke v. Hancock Mutual Life Ins. Co.,* 90 Conn. 303.

If the nature of the employment, or the conditions under which it was pursued, or the exposure to injury which it entails, or the doing of something incidental to the employment, was the proximate cause of the injury, it arises out of the employment. *Sponatski's Case,* 220 Mass. 526, L. R. A. 1916A, 333.

Upon the question whether deceased died of heat prostration or heatstroke, the words "sunstroke" and "heatstroke" are synonymous, and mean a sudden prostration resulting from exposure to excessive heat, regardless of the source from which the heat emanates.

"Sunstroke" is a personal injury caused by "accident," within the meaning of the workmen's compensation act. *State v. District Court,* 138 Minn. 250, L. R. A. 1918F, 918.

It has been said that heatstroke is an affection which is often fatal, due to exposure to the sun or excessive heat, and is marked by sudden prostration, with symptoms similar to apoplexy. Another says it is caused by paralysis of the center of respiration. *Kanscheit v. Garrett Laundry Co.,* 101 Neb. 702.

One of the physicians testified that heat prostration is usually due to an increase in the temperature in the body, and that temperature is kept down by the circulation of

air and evaporation, and the sun's rays are not a necessary factor.

2. It is a general principle that the employer is not responsible for damages to his workmen by lightning, storms, sunstroke, freezing, floods, or earthquake, which vigilance could not foresee or prevent. But compensation has been allowed for heat prostration in this state and many others, as an exception to the general rule, when the employment in any particular case brought with it greater hazard and exposure than those to which workmen generally in that locality were subjected.

It is sustained by testimony in this case that the deceased was subjected to greater risk and hazard than was the public generally, and that the widow was entitled to compensation. *Young v. Western Furniture & Mfg. Co.,* 101 Neb. 696; *Kanscheit v. Garrett Laundry Co.,* 101 Neb. 702; *Manning v. Pomerene,* 101 Neb. 127.

This court finds there is sufficient testimony to support the contention that deceased came to his death by heat prostration, which, under all of the evidence in this case, was an injury arising out of and in the course of his employment. There being no error in the record, the judgment of the district court is

AFFIRMED.